1  Ben F. Pierce Gore (SBN 128515)
   PRATT & ASSOCIATES
2  1871 The Alameda, Suite 425
   San Jose, California 95126
3  Telephone: (408) 369-0800
   Facsimile: (408) 369-0752
4  pgore@prattattorneys.com

5
   (Additional counsel listed on signature page)
6

7  *Attorneys for Plaintiffs and the Putative Class*

8              **UNITED STATES DISTRICT COURT**
         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
9              **SAN FRANCISCO DIVISION**                    *EDL*

10
   Martens Cars of Washington, Inc.; Hudson      )
11 Charleston Acquisition, LLC d/b/a Hudson       )  **CV 13 2696**
   Nissan; John O'Neil Johnson Toyota, LLC;       )  No. _____
12 Hudson Gastonia Acquisition, LLC; HC           )
   Acquisition, LLC d/b/a Toyota of Bristol; and  )
13 Desert European Motorcars, Ltd.,               )  **CLASS ACTION COMPLAINT FOR**
                                                  )  **DAMAGES AND INJUNCTIVE RELIEF**
14                                                )
              Plaintiffs,                         )  **JURY TRIAL DEMANDED**
15                                                )
                                                  )
   v.                                             )
16                                                )
                                                  )
17 Nippon Yusen Kabushiki Kaisha; NYK Line        )
   (North America) Inc.; Mitsui O.S.K. Lines      )
18 Ltd.; Kawasaki Kisen Kaisha Ltd.; "K" Line     )
   America, Inc.; Wilh. Wilhelmsen Holding        )
19 ASA; Wallenius Lines AB; Wilh.Wilhelmsen       )
   ASA; Wallenius Wilhelmsen Logistics AS;        )
20 Wallenius Wilhelmsen Logistics Americas        )
   LLC; Eukor Car Carriers Inc; Compañía Sud      )
21 Americana de Vapores S.A.; and CSAV            )
   Agency North America, LLC;                     )
22                                                )
                                                  )
23             Defendants.                        )

24

25

26

27

28

# TABLE OF CONTENTS

| | | | |
|---|---|---|---:|
| I. | Nature of Action | | 1 |
| II. | Jurisdiction and Venue | | 2 |
| III. | Parties | | 5 |
| | A. | Plaintiffs | 5 |
| | B. | Defendants | 8 |
| IV. | Agents and Co-Conspirators | | 13 |
| V. | Factual Allegations | | 13 |
| | A. | The Structure and Characteristics of the Vehicle Shipping Market Render the Conspiracy Both Possible and Plausible | 13 |
| | | 1. The Vehicle Shipping Market Has High Barriers to Entry | 14 |
| | | 2. There is Inelasticity of Demand for Car Shipping | 16 |
| | | 3. The Market for Vehicle Shipping is Highly Concentrated | 17 |
| | | 4. The Service Defendants Provide Is Highly Homogenous | 18 |
| | | 5. Defendants Have Had Ample Opportunities to Conspire | 18 |
| | | 6. The Market for Vehicle Shipping Services Has Excess Capacity | 19 |
| | B. | There is considerable evidence that the price fixing or bid rigging covered by this complaint probably has occurred. | 20 |
| | | 1. Defendants' Collusive Conduct in Other Markets Indicates Their Cartel Tendencies. | 20 |
| | | 2. Coordinated Price Increases Not Explained by Increases in Demand Indicate the Existence of a Cartel and the Extent of Damage it has Caused | 23 |

| | | 3. | Coordinated Global Government Investigations Into Price-Fixing in the Vehicle Shipping Industry Indicate Developing Interest in This Cartel | 23 |

VI. Class Action Allegations ....... 26

VII. ....... 29

laintiffs and the Classes Suffered Antitrust Injury

VIII. Plaintiffs' Claims are not Barred by the Statute of Limitations ....... 32

    A.    The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not And Could Not Discover The Claims ....... 32

    B.    Fraudulent Concealment Tolled the Statute of Limitations ....... 33

IX. First Claim for Relief ....... 34

X. Second Claim for Relief ....... 37

XI. Third Claim for Relief ....... 61

XII. Fourth Claim for Relief ....... 78

XIII. Prayer for Relief ....... 79

XIV. Jury Demand ....... 81

**PLAINTIFFS** Martens Cars of Washington, Inc. ("Plaintiff Martens"); Hudson Charleston Acquisition, LLC d/b/a Hudson Nissan ("Plaintiff Hudson Nissan"); John O'Neil Johnson Toyota, LLC ("Plaintiff Johnson"); Hudson Gastonia Acquisition, LLC ("Gastonia Nissan"); HC Acquisition, LLC d/b/a Toyota of Bristol ("Bristol Toyota"); and Desert European Motorcars, Ltd ("Plaintiff Desert"). (collectively "Plaintiffs") file this Class Action Complaint and Demand for Jury Trial and Injunctive Relief on behalf of themselves and all others similarly situated (the "Classes" as defined below).

Plaintiffs bring this class action for damages, injunctive relief, and other relief pursuant to federal antitrust laws; state antitrust, unfair competition, and consumer protection laws; and the common law of unjust enrichment; demand a trial by jury; and allege as follows:

## NATURE OF ACTION

1.     Plaintiffs bring this lawsuit as a proposed class action against the Defendants Nippon Yusen Kabushiki Kaisha ("NYK Line"); NYK Line (North America) Inc. (NYK-US); Mitsui O.S.K. Lines Ltd. (MOL); Kawasaki Kisen Kaisha Ltd. ("K Line); "K" Line America, Inc. (KLine-US); Wilh. Wilhelmsen Holding ASA (WWH); Wallenius Lines AB (WL-AB); Wilh.Wilhelmsen ASA (WW-ASA); Wallenius Wilhelmsen Logistics AS (WWL); Wallenius Wilhelmsen Logistics Americas LLC (WWLA); Eukor Car Carriers Inc. ("Eukor"); Compañía Sud Americana de Vapores S.A. (CSAV); and CSAV Agency North America, LLC ("CSAV Agency") (collectively "Defendants"). Defendants control over 70 percent of the global market for transoceanic shipping of cars, trucks, construction equipment, and other products (hereinafter "Vehicles") using specialized cargo ships known as Roll On-Roll Off vessels ("Ro-Ros") and, directly or through their wholly owned and/or controlled subsidiaries and joint ventures, provide,

market, and/or sell Vehicle Shipping Services to automobile original equipment manufacturers ("OEMs"). As used herein, "Vehicle Shipping Services" refers to the paid ocean transportation of vehicles Ro-Ro.

2.    In FY2011, over 12 million vehicles were transported to the United States, at a cost of over $1 billion to the United States automotive industry, via Ro-Ros equipped to transport upwards of 10,000 vehicles in a single voyage. Defendants' conspiracy successfully targeted the industry, raising prices for automobile dealers.  Defendants and their co-conspirators (as yet unknown) agreed, combined, and conspired to (1) rig bids; (2) fix, stabilize, and maintain the fares; and (3) allocate the market and customers in the United States for car shipping.  This anticompetitive conduct was and is directed at the market for vehicles manufactured outside the United States.  Competition authorities in the United States, Japan, the European Union, and Canada have been investigating this conspiracy since at least September 2012 when they conducted coordinated raids at the Tokyo and European offices of several Defendants. Plaintiffs seek to represent classes of auto dealers who purchased new vehicles that were transported by Ro-Ro during the period from and including January 1, 2007 to the present (the "Class Period").

## JURISDICTION AND VENUE

3.    Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1).  Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, and consumer protection laws and the common law of unjust enrichment and seek to obtain restitution, recover damages, and secure other relief against

---

**CLASS ACTION COMPLAINT**                                                                 2

1 │ Defendants for violation of those state laws. Plaintiffs and the Classes also seek attorneys' fees,

2 │ costs, and other expenses under federal and state law.

3 │     4.    This Court has jurisdiction over the subject matter of this action pursuant to

4 │ Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1),

5 │ and 28 U.S.C. §§ 1331 and 1337. This Court has subject matter jurisdiction over the state law

6 │ claims in this action pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that (i) this is a class action

7 │ in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and

8 │ costs, and in which some members of the proposed Classes are citizens of a state different from

9 │ some of the Defendants; and (ii) Plaintiffs' state law claims form part of the same case or

10 │ controversy as their federal claims under Article III of the United States Constitution.

11 │     5.    Venue is proper in this District pursuant to Section 12 of the Clayton Act (15

12 │ U.S.C. § 22) and 28 U.S.C. §§ 1391 (b), (c), and (d) because a substantial portion of the events

13 │ giving rise to Plaintiffs' claims occurred in this District, a substantial portion of affected

14 │ interstate trade and commerce discussed below has been carried out in this District, and one or

15 │ more of the Defendants reside, are licensed to do business in, are doing business in, had agents in,

16 │ or are found or transact business in this District.

17 │     6.    This Court has *in personam* jurisdiction over each of the Defendants because each

18 │ Defendant, either directly or through the ownership and/or control of its United States

19 │ subsidiaries, *inter alia*, (a) transacted business in the United States, including in this District; (b)

20 │ directly or indirectly sold or marketed Vehicle Shipping Services throughout the United States,

21 │ including in this District, through its ports and waterways; (c) had substantial aggregate contacts

22 │ with the United States as a whole, including in this District; (d) was through its own actions and

**CLASS ACTION COMPLAINT**    3

through the actions of its co-conspirators, engaged in an illegal price-fixing conspiracy that was directed at, and had the direct, substantial, reasonably foreseeable, and intended effect of causing injury to the business or property of persons and entities residing in, located in, or doing business throughout the United States; and/or (e) engaged in actions in furtherance of an illegal conspiracy in this District either itself or through its co-conspirators. Defendants also conduct business throughout the United States, including in this District, and they have purposefully availed themselves of the laws of the United States and this District.

7. Defendants' and their co-conspirators' services and their anticompetitive conduct, both inside and outside the United States, were in the flow of and/or had, and continue to have, direct, substantial, and foreseeable anticompetitive effects on interstate commerce in the United States. In addition, Defendants and their co-conspirators' services and their anticompetitive conduct were in the flow of and have direct, substantial, and foreseeable anticompetitive effects on import trade and commerce into the United States. To the extent any vehicles and related Vehicle Shipping services are purchased in the United States and such vehicles or Vehicle Shipping services do not constitute import commerce, Defendants' unlawful activities with respect thereto had, and continue to have, a direct, substantial, and reasonably foreseeable effect on United States commerce.

8. Vehicles manufactured abroad, the prices of which include Vehicle Shipping Services, are transported from abroad by Defendants and their co-conspirators to automobile dealers in the United States through ports in and around San Francisco, Los Angeles, San Diego, and other United States cities and sold for use within the United States. They are goods brought into the United States for sale and, by their very nature, constitute import commerce.

---

**CLASS ACTION COMPLAINT** 4

9.     Defendants, directly and through their agents and co-conspirators, substantially affected commerce throughout the United States and injured Plaintiffs and the Classes byengaging in activities affecting all states to fix, maintain, stabilize, and/or inflate prices of Vehicle Shipping, and that conspiracy unreasonably restrained trade and adversely affected the market for Vehicle Shipping.

10.     Defendants' anticompetitive conduct, and its effect on United States commerce described herein, proximately caused substantial and foreseeable antitrust injury to and adversely affected persons who indirectly purchased Vehicle Shipping services from Defendants, in the United States, including Plaintiffs and the Classes.

**PARTIES**

**A.     Plaintiffs**

11.     Plaintiff Martens is a Maryland corporation with its principal place of business in the District of Columbia. Plaintiff Martens is an authorized Volvo and Volkswagen dealer that buys and then sells Volvo- and Volkswagen-brand vehicles that were shipped via Ro-Ro by one or more of the Defendants or their co-conspirators from the vehicles' country of origin to the United States.

12.     During the Class Period, Plaintiff Martens purchased vehicles shipped by one or more of the Defendants or their co-conspirators. Plaintiff Martens purchased and received the afore-mentioned vehicles and paid for the Vehicle Shipping in the District of Columbia. Plaintiff Martens has also displayed, sold, serviced, and advertised its vehicles in the District of Columbia during the Class Period.

**CLASS ACTION COMPLAINT**                                                                    5

13.     Plaintiff Hudson Nissan is a South Carolina limited liability company with its principal place of business in North Charleston, South Carolina. Plaintiff Hudson Nissan is an authorized Nissan dealer that buys and then sells Nissan-brand cars that were shipped via Ro-Ro by one or more of the Defendants or their co-conspirators from the vehicles' country of origin to the United States.

14.     During the Class Period, Plaintiff Hudson Nissan purchased vehicles shipped by one or more of the Defendants or their co-conspirators. Plaintiff Hudson Nissan purchased and received the afore-mentioned vehicles and paid for the Vehicle Shipping in South Carolina. Plaintiff Hudson Nissan has also displayed, sold, serviced, and advertised its vehicles in South Carolina during the Class Period.

15.     Plaintiff Gastonia Nissan is a North Carolina limited liability company with its principal place of business in Gastonia, North Carolina. Plaintiff Gastonia Nissan an authorized Nissan dealer who buys and then sells Nissan-brand vehicles that were shipped via Ro-Ro by one or more of the Defendants or their co-conspirators from the vehicles' country of origin to the United States.

16.     During the Class Period, Plaintiff Gastonia Nissan purchased vehicles shipped by one or more Defendants or their co-conspirators. Plaintiff Gastonia Nissan purchased and received the afore-mentioned vehicles and paid for the Vehicle Shipping in North Carolina. Plaintiff Johnson has also displayed, sold, serviced, and advertised its vehicles in North Carolina during the Class Period.

17.     Plaintiff Johnson is a Mississippi limited liability company with its principal place of business in Meridian, Mississippi. Plaintiff Johnson is an authorized Toyota dealer who buys

1  and then sells Toyota-brand vehicles that were shipped via Ro-Ro by one or more of the

2  Defendants or their co-conspirators from the vehicles' country of origin to the United States.

3      18.     During the Class Period, Plaintiff Johnson purchased vehicles shipped by one or

4  more Defendants or their co-conspirators. Plaintiff Johnson purchased and received the afore-

5  mentioned vehicles and paid for the Vehicle Shipping in Mississippi. Plaintiff Johnson has also

6

7  displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

8      19.     Plaintiff Bristol is a Tennessee limited liability company with its principal place

9  of business in Bristol, Tennessee. Plaintiff Bristol is an authorized Toyota dealer, who buys and

10  then sells Toyota-brand cars that were shipped via Ro-Ro by one or more of the Defendants or

11  their co-conspirators from the vehicles' country of origin to the United States.

12      20.     During the Class Period, Plaintiff Bristol purchased vehicles shipped by one or

13

14  more Defendants or their co-conspirators. Plaintiff Bristol purchased and received the afore-

15  mentioned vehicles and paid for the Vehicle Shipping in Tennessee. Plaintiff Bristol has also

16  displayed, sold, serviced, and advertised its vehicles in Tennessee during the Class Period.

17      21.     Plaintiff Desert is a California company with its principal place of business in

18  Rancho Mirage, California. Plaintiff Desert is an authorized Rolls Royce, Bentley, Aston

19  Martin, Maserati, Porsche, Jaguar, Land Rover, Audi, Lotus, and Spyker dealer who buys and

20

21  then sells Rolls Royce-, Bentley-, Aston Martin-, Maserati-, Porsche-, Jaguar-, Land Rover-,

22  Audi-, Lotus-, and Spyker-brand vehicles that were shipped via Ro-Ro by one or more of the

23  Defendants or their co-conspirators from the vehicles' country of origin to the United States.

24      22.     During the Class Period, Plaintiff Desert purchased vehicles shipped by one or

25  more Defendants or their co-conspirators. Plaintiff Desert purchased and received the afore-

26

27

28  **CLASS ACTION COMPLAINT**                                                    7

1  mentioned vehicles and paid for the Vehicle Shipping in California. Plaintiff Desert has also

2  displayed, sold, serviced, and advertised its vehicles in California during the Class Period.

3      23.    The majority of Plaintiffs described above sell vehicles to customers who employ

4  said vehicles for personal use.

5

6      **B.    Defendants**

7      24.    Defendant NYK Line is a Japanese company with its principal place of business

8  in Tokyo, Japan. It owns and/or operates 121 Ro-Ros and transported nearly 3 million vehicles

9  in FY2011. NYK Line, directly or through its wholly owned and/or controlled subsidiaries and

10  joint ventures, shipped vehicles into the United States, including in this District, during the Class

11  Period. NYK Line also, directly or through its wholly owned and/or controlled subsidiaries and

12  joint ventures, marketed, sold, or provided its Vehicle Shipping Services in the United States,

13  including in this District, during the Class Period.

14

15      25.    Defendant NYK-US is a subsidiary and wholly owned and/or controlled by

16  Defendant NYK Line. At all times during the Class Period, its activities in the United States were

17  under the control and direction of its Japanese parent, which controlled its policies, sales, and

18  finances. It is headquartered in Secaucus, New Jersey and acts as Defendant NYK Line's agent

19  in the United States. NYK-US, directly or through its subsidiaries and joint ventures, shipped

20  vehicles into the United States, including in this District, during the Class Period. NYK-US also,

21  directly or through its subsidiaries and joint ventures, marketed, sold, or provided its Vehicle

22  Shipping Services in the United States, including in this District, during the Class Period.

23

24      26.    Defendant MOL is a Japanese company with its principal place of business in

25  Tokyo, Japan. It owns and/or operates 128 Ro-Ros. Defendant MOL has subsidiaries acting as

26

27

28  **CLASS ACTION COMPLAINT**                                                    8

1    its agents in the United States and has offices throughout the country, including headquarters in

2    Lombard, Illinois. MOL, directly or through its wholly owned and/or controlled subsidiaries and

3    joint ventures, shipped vehicles into the United States, including in this District, during the Class

4    Period. MOL also, directly or through its wholly owned and/or controlled subsidiaries and joint

5

6    ventures, marketed, sold, or provided its Vehicle Shipping Services in the United States, including

7    in this District, during the Class Period.

8        27.     Defendant K Line is a Japanese corporation with its principal place of business in

9    Tokyo, Japan. At the end of FY2011, it owned and/or operated 97 Ro-Ros. Defendant K Line ,

10    directly or through its wholly owned and/or controlled subsidiaries and joint ventures, shipped

11    vehicles into the United States, including in this District, during the Class Period. K Line also,

12

13    directly or through its wholly owned and/or controlled subsidiaries and joint ventures, marketed,

14    sold, or provided its Vehicle Shipping Services in the United States, including in this District,

15    during the Class Period.

16        28.     Defendant KLine-US is a subsidiary of and wholly owned and/or controlled by

17    Defendant K Line. At all times during the Class Period, its activities in the United States were

18    under the control and direction of its Japanese parent, which controlled its policies, sales, and

19

20    finances. It is headquartered in Richmond, Virginia, has offices throughout the United States,

21    including in this District, and acts as Defendant K Line's shipping agent in the United States.

22    Defendant KLine-US, directly or through its subsidiaries and joint ventures, shipped vehicles

23    into the United States, including in this District, during the Class Period. KLine-US also,

24    directly or through its subsidiaries and joint ventures, marketed, sold, or provided its Vehicle

25    Shipping Services in the United States, including in this District, during the Class Period.

26

27

28    **CLASS ACTION COMPLAINT**                                               9

29. Defendant WWH is a Norwegian limited liability company with its principal place of business in Bærum, Norway. WWH, directly or through its wholly owned and/or controlled subsidiaries and joint ventures, shipped vehicles into the United States, including in the State of California, during the Class Period. WWH also, directly or through its subsidiaries and joint ventures, marketed, sold, or provided its Vehicle Shipping Services in the United States, including in the State of California, during the Class Period.

30. Defendant WL-AB is a Swedish corporation with its principal place of business in Stockholm, Sweden. WL-AB partners with Defendants NYK Line and WW-ASA in controlling 160 vessels. WL-AB, directly or through its wholly owned and/or controlled subsidiaries and joint ventures, shipped vehicles into the United States, including in the State of California, during the Class Period. WL-AB also, directly or through its wholly owned and/or controlled subsidiaries or joint ventures, marketed, sold, or provided its Vehicle Shipping Services in the United States, including in the State of California, during the Class Period. WL-AB has a 50-percent ownership interest in Defendant WWL and a 40-percent ownership interest in Eukor.

31. Defendant WW-ASA is a Norwegian private limited liability company with its principal place of business in Oslo, Norway. WW-ASA partners with Defendants NYK Lines and WL-AB in controlling 142 vessels. WW-ASA, directly or through its wholly owned and/or controlled subsidiaries and joint ventures, shipped vehicles into the United States, including in the State of California, during the Class Period. WW-ASA also, directly or through its wholly owned and/or controlled subsidiaries or joint ventures, sold, marketed, or provided its Vehicle Shipping Services in the United States, including in the State of California, during the Class

**CLASS ACTION COMPLAINT** 10

Period. It has a 50 percent ownership interest in Defendant WWL and a 40 percent ownership interest in Defendant Eukor.

32.      Defendant WWL is a Norwegian-Swedish corporation with its principal places of business in Oslo, Norway and Stockholm, Sweden. It is a joint venture between Defendants WW-ASA and WL-AB that operates most of those companies' vessels and is the contracting party in customer contracts with OEMs for Ro-Ro services. At all times during the Class Period, WWL's activities were under the control and direction of WL-AB and WW-ASA, which controlled its policies, sales, and finances. WWL currently owns and/or operates more than 60 Ro-Ros and ships approximately 2 million vehicles on an annual basis. It has offices throughout the United States, including in California. WWL, directly or through its wholly owned and/or controlled subsidiaries and joint ventures, shipped vehicles into the United States, including in the State of California, during the Class Period. WWL also, directly or through its wholly owned and/or controlled subsidiaries or joint ventures, marketed, sold, or provided its Vehicle Shipping Services in the United States, including in the State of California, during the Class Period.

33.      Defendant WWLA is a subsidiary of and is wholly owned and/or controlled by Defendant WWL. At all times during the Class Period, its activities in the United States were under the control and direction of WWL, which controlled its policies, sales, and finances. It has offices in several states, including California. WLLA acts as Defendant WLL's agent in the United States and is operated by Defendant WWL. It shipped vehicles into the United States, including in the State of California, during the Class Period. WWLA also marketed, sold, or provided its Vehicle Shipping Services in the United States, including in the State of California, during the Class Period.

---

**CLASS ACTION COMPLAINT**                                                                 11

34. Defendant Eukor is a South Korean corporation with its principal place of business in Seoul, South Korea. It owns and/or operates 76 Ro-Ros and ships. At all times during the Class Period, Eukor's activities were under the control and direction of WL-AB and WW-ASA, which controlled its policies, sales, and finances. Defendant Eukor has offices in California and New Jersey , and it, directly or through its wholly owned and/or controlled subsidiaries and joint ventures, shipped vehicles into the United States, including in the State of California, during the Class Period. Eukor also, directly or through its wholly owned and/or controlled subsidiaries and joint ventures, marketed, sold, or provided its Vehicle Shipping Services in the United States, including in the State of California, during the Class Period.

35. Defendant CSAV is a Chilean corporation with its principal place of business in Valparaiso, Chile and a regional office in Iselin, New Jersey. CSAV, directly or through its wholly owned and/or controlled subsidiaries and joint ventures, shipped vehicles into the United States, including in this District, during the Class Period. CSAV also, directly or through its wholly owned and/or controlled subsidiaries and joint ventures, marketed, sold, or provided its Vehicle Shipping Services in the United States, including in this District, during the Class Period.

36. Defendant CSAV Agency, which is a subsidiary wholly owned and controlled by Defendant CSAV, is a limited liability company headquartered in Iselin, New Jersey. At all times during the Class Period, its activities in the United States were under the control and direction of its Chilean parent, which controlled its policies, sales, and finances. It is the exclusive maritime agent for Defendant CSAV in the United States. CSAV Agency shipped Vehicles into the United States, including in this District, during the Class Period. CSAV Agency also

**CLASS ACTION COMPLAINT** 12

1  marketed, sold, or provided its Vehicle Shipping Services in the United States, including in this

2  District, during the Class Period.

3  ## AGENTS AND CO-CONSPIRATORS

4  37.    Each Defendant acted as the principal of or agent for the other Defendant with

5  respect to the acts, violations, and common course of conduct alleged.

6

7  38.    Various persons, partnerships, sole proprietors, firms, corporations, and individuals

8  not named as Defendants in this lawsuit, the identities of which are presently unknown, have

9  participated as co-conspirators with Defendants in the offenses alleged in this Complaint and have

10 performed acts and made statements in furtherance of the conspiracy or in furtherance of the

11 anti-competitive conduct.

12 39.    Whenever reference is made in this Complaint to any act, deed, or transaction of

13 any corporation or limited liability entity, the allegation means that the corporation or limited

14 liability entity engaged in the act, deed, or transaction by or through its officers, directors, agents,

15

16 employees, or representatives while they were actively engaged in the management, direction,

17 control, or transaction of the corporation or limited liability entity's business or affairs.

18 ## FACTUAL ALLEGATIONS

19 **A.    The Structure and Characteristics of the Vehicle Shipping Market Render
       the Conspiracy Both Possible and Plausible.**

20

21 40.    A Ro-Ro is a special type of ocean vessel that allows wheeled vehicles to be

22 driven and parked on its decks for long voyages. Ro-Ros have special ramps to permit easy

23 access, high sides to protect the cargo, and numerous decks to allow storage of a large number

24 and variety of Vehicles. Ro-Ros are employed by OEMs to transport new Vehicles from their

25

26 country of origin to the country where they will be sold. Defendants and their co-conspirators

27

28 CLASS ACTION COMPLAINT                                                              13

supplied Vehicle Shipping Services to OEMs for Vehicles manufactured and sold in Japan, Europe, and elsewhere, transporting those Vehicles from their country of origin to various ports in the United States, including in this District, at which point the Vehicles were delivered to Plaintiffs and the Classes.

41.    Defendants' main customers include: Honda, Toyota, Mercedes-Benz, BMW, Ford, Subaru, Mazda, Suzuki, Mitsubishi, Nissan, Kia, Hyundai, and Volvo, among others. These OEMs directly purchase Vehicle Shipping Services from Defendants, usually pursuant to long-term shipping contracts they have entered into with Defendants. Plaintiffs and the Classes are then billed in full and pay in full for the Vehicle Shipping Services when they purchase their Vehicles. Thus, Plaintiffs and members of the proposed Classes purchase Vehicle Shipping Services indirectly from Defendants and their co-conspirators.

42.    The annual market for Vehicle Shipping Services in the United States is nearly a billion dollars. The market is between $600 and $800 million each year for the transportation of new, imported Vehicles manufactured elsewhere for export to and sale in the United States.

43.    The structure and other characteristics of the Vehicle Shipping market are conducive to a price-fixing agreement and have made collusion particularly attractive in these markets. Specifically, the Vehicle Shipping market (1) has high barriers to entry, (2) has inelasticity of demand, (3) is highly concentrated, (4) is highly homogenized, (5) is rife with opportunities to meet and conspire, and (6) has excess capacity.

**1.    The Vehicle Shipping Market Has High Barriers to Entry.**

44.    A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new sources of supply seeking to benefit from

CLASS ACTION COMPLAINT                                                                                      14

the supra-competitive pricing. When, however, there are significant barriers to entry, new entrants are much less likely to enter the market. Thus, barriers to entry help facilitate the formation and maintenance of a cartel.

45.     There are substantial barriers that preclude, reduce, or make more difficult entry into the Vehicle Shipping market. Transporting Vehicles across oceans without damaging them requires highly specialized and sophisticated equipment, resources, and industry knowledge. The Ro-Ros that make such transport possible are highly specialized, thus restricting the use of the Ro-Ros to the Vehicle Shipping market. A new entrant into the business would face costly and lengthy start-up costs, including multi-million dollar costs associated with manufacturing or acquiring a fleet of Ro-Ros and other equipment, energy, transportation, distribution infrastructure, skilled labor, and long-standing customer relationships.

46.     The Vehicle Shipping Services market also involves economies of scale and scope, which present additional barriers to entry.

a.     Economies of scale exist where firms can lower the average cost per unit through increased production, since fixed costs are shared over a larger number of units. Fuel accounts for nearly 50 percent of all operational costs for Ro-Ros. However, Ro-Ros are less sensitive to fuel prices than other modes of transportation, providing opportunities to exploit economies of scale. As fuel prices increased in the last five to ten years, market participants were incentivized to increase the average size of vessels. This reflects the presence of economies of scale, because fuel costs did not increase proportionally as vessel size grew.

b.     Economies of scope exist where firms achieve a cost advantage from providing a wide variety of products or services. The major Ro-Ro operators, including

---

**CLASS ACTION COMPLAINT**                                                                                     15

1   Defendants, own related shipping or transportation businesses they can utilize to provide

2   additional services to clients, such as the operation of dedicated shipping terminals and inland

3   transportation of Vehicles.

### 2.    There is Inelasticity of Demand for Car Shipping.

47.    "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other. For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any. In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite a price increase.

48.    For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices. Otherwise, increased prices would result in declining sales, revenues, and profits as customers purchased substitute products or declined to buy altogether. Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

49.    Demand for Ro-Ros is highly inelastic. This is because there are no close substitutes for this service. The Ro-Ro is the only ocean vessel that has the carrying capacity for a large number of Vehicles. It is more versatile than other substitutes because it is built to adjust to various shapes and sizes. Because a container ship functions based on the uniformity of the cargo—everything must fit within the standardized containers—it is not conducive to transporting larger and more irregularly-shaped goods, such as cars and trucks. Foreign OEMs must employ Ro-Ros to facilitate the sale of their Vehicles in North America, regardless of

whether prices are kept at supra-competitive levels. There is simply no alternative for high volume transoceanic transportation of Vehicles to the United States.

### 3. The Market for Vehicle Shipping is Highly Concentrated.

50. Only a handful of companies supply Vehicle Shipping Services for import of Vehicles to the U.S., and the market is concentrated. As the table below demonstrates, Defendants control over 70 percent of that market.

| Ten Largest Operators of Vehicle Carriers (as of 1/1/13)[1] | | | | | |
|---|---|---|---|---|---|
| Rank | Carrier | Number of Vessels[2] | Market Share | Vehicle Capacity | Market Share |
| 1 | Defendant NYK Line | 104 | 15.5% | 599,897 | 16.3% |
| 2 | Defendant MOL | 83 | 12.4% | 475,809 | 12.9% |
| 3 | Defendant K Line | 79 | 11.8% | 413,134 | 11.2% |
| 4 | Defendant EUKOR | 78 | 11.6% | 497,455 | 13.5% |
| 5 | Defendant WWL | 61 | 9.1% | 400,140 | 10.8% |
| 6 | Hyundai Gloves | 61 | 9.1% | 252,554 | 6.8% |
| 7 | Höegh Autoliners | 46 | 6.9% | 281,438 | 7.6% |
| 8 | Grimaldi (Naples) | 45 | 6.7% | 177,428 | 4.8% |
| 9 | Nissan Motor Car Carrier Co. | 11 | 2.8% | 102,370 | 2.8% |
| 10 | United European Car Carriers | 9 | 1.6% | 42,930 | 1.2% |
| 11 | Sallaum Lines | 6 | 1.3% | 40,376 | 1.1% |
| 12 | American Roll-on/Roll-off Carrier | 7 | 1.0% | 40,270 | 1.1% |
| 13 | Defendant CSAV | 6 | 0.9% | 29,251 | 0.8% |
| 14 | Toyofuji Shipping Co. Ltd | 6 | 0.9% | 34,560 | 0.9% |

[1] *See* FACT BOOK I (NYK Line Apr. 30, 2013) (citing Hesnes Shipping AS, The Car Carrier Market 2012)

[2] This table includes only vessels with a capacity of 2,000 cars or more.

**CLASS ACTION COMPLAINT**

17

### 4.   The Service Defendants Provide Is Highly Homogenous.

29.   In a competitive market, a similar, easily comparable product or service should result in significant price competition. Competitors are also able to collude more easily when the products or services are not easily distinguishable because a standard price can be set across the industry. Correspondingly, there is a significant incentive among competitors to agree not to lower prices.

30.   The Vehicle Shipping industry is essentially a commoditized service—the actual transportation of Vehicles is qualitatively the same across different carriers.   The core considerations for a purchaser will be where, when, and how much. Thus, Defendants had every reason to enter their unlawful conspiracy.

### 5.   Defendants Have Had Ample Opportunities to Conspire.

51.   Defendants attended industry events where they had the opportunity to meet, have improper discussions under the guise of legitimate business contacts, and perform acts necessary for the operation and furtherance of the conspiracy. For example, there are frequent trade shows for shipping companies around the globe, such as the Breakbulk conferences and the biennial RoRo trade show in Europe.

52.   Defendants K Line and NYK Lines are also members of the Transpacific Stabilization Agreement (TSA), which consists of "major ocean container shipping lines that carry cargo from Asia to ports and inland points in the U.S." According to the TSA website, it provides a forum for its members to, *inter alia*,

- Meet, exchange market information, and jointly conduct market research; . . . and

**CLASS ACTION COMPLAINT**                                                                 18

- Develop voluntary, non-binding guidelines for rates and charges.

*See* About TSA *at* http://www.tsacarriers.org/about.html.  TSA meetings, which are ostensibly held to set rates for container shipping, provide an opportunity for its members, including Defendants K Line and NYK Lines, to discuss Vehicle Shipping markets, routes, and rates and engage in illegal price fixing and bid rigging conspiracies.  In fact, Defendants K Line, NYK Lines, and MOL have already been convicted and fined by the Department of Justice (DOJ), Japan's Fair Trade Commission (JFTC), the European Commission, the Canadian Competition Bureau (CCB), and various other antitrust organizations for their roles in a conspiracy to fix air freight forwarding fees across several continents.

### 6. The Market for Vehicle Shipping Services Has Excess Capacity.

53.     Excess capacity occurs when a market is capable of supplying more of a product or service than is needed.  This often means that demand is less than the output the market has the capability to produce.  Academic literature suggests, and courts have found, that the presence of excess capacity can facilitate collusion.  *See* Benoit, J. and Krishna, V., *Dynamic Duopoly: Prices and Quantities*, REV. OF ECON. STUDIES, 54, 23-36 (1987); Davidson, Carl & Deneckere, Raymond, *Excess Capacity and Collusion*, INT'L ECON. REV., 31(3), 521-41 (1990); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 657 (7th Cir. 2002).  Significantly, the market for Vehicle Shipping Services has operated in a state of excess capacity since 2008.  The tables below demonstrate that while the capacity of Ro-Ros to transport Vehicles has increased since 2007, the utilization rate of Ro-Ros has fallen, and remained stable at a rate of approximately 83 percent since 2010.

---

**CLASS ACTION COMPLAINT**                                                                 19

**Capacity of Car Carrier** (in cars)

**Utilization Rate** (per shipment)

B. **There is considerable evidence that the price fixing or bid rigging covered by this complaint probably has occurred.**

    1. **Defendants' Collusive Conduct in Other Markets Indicates Their Cartel Tendencies.**

54. In 2007, the DOJ and European Commission launched an investigation into price fixing among international air freight forwarders. On October 10 of that year, the European Commission launched unannounced inspections at the premises of various air international freight forwarding companies with the help and coordination of various other nations' enforcement groups.

55. On March 19, 2009, the JFTC ordered 12 companies to pay $94.7 million in fines for violations of the Japan's Antimonopoly Act (AMA). Included among the 12 companies were Yusen Air & Sea Service, a subsidiary of Defendant NYK Lines, and MOL Logistics (Japan), a subsidiary of Defendant MOL.

56. The JFTC concluded that the companies had, over a five-year period, met and agreed to the amount of fuel surcharges for shippers, AMS charges, security charges, and

**CLASS ACTION COMPLAINT** 20

explosive inspection charges that they would charge their international air freight forwarding customers. The agreements were, according to the JFTC, negotiated at meetings of the Japan Aircargo Forwarders Association.

57.     Yusen Logistics filed a complaint in April 2009 requesting a hearing to review the JFTC's orders, and the Tokyo High Court upheld the orders on November 9, 2012.

58.     On September 28, 2011, six companies – Kintetsu World Express Inc., Hankyu Hanshin Express Co. Ltd., Nippon Express Co. Ltd., Nissin Corporation, Nishi-Nippon Railroad Co. Ltd., and Vantec Corporation – pleaded guilty to informations in the United States District Court for the District of Columbia (D.D.C.) for their roles in the air freight forwarding conspiracy and agreed to pay $46.8 million in criminal fines.

59.     On September 30, 2011, MOL Logistics (Japan) Co. Ltd., a subsidiary of Defendant MOL, and 12 other companies pleaded guilty to informations in the D.D.C. charging them with Sherman Act violations related to price fixing and agreed to pay $100 million in criminal fines. According to the Information filed against MOL Logistics, it and its co-conspirators accomplished their conspiracy by:

a.      Participating in meetings, conversations, and communications to discuss certain components of freight forwarding service fees to be charged on air cargo shipments from Japan to the United States;

b.      Agreeing, during those meetings, conversations, and communications, on one or more components of the freight forwarding service fees to be charged on air cargo shipments from Japan to the United States;

**CLASS ACTION COMPLAINT** 21

c.   Levying freight forwarding service fees, and accepting payments for services provided for, air cargo shipments from Japan to the United States, in accordance with the agreements reached; and

d.   Engaging in meetings, conversations, and communications for the purpose of monitoring and enforcing adherence to the agreed-upon freight forwarding service fees.

60.   On March 28, 2012, the European Commission fined 14 international groups of companies a total of $219 million for their participation in the air cargo cartels and violating European Union antitrust rules. According to the EC, "[i]n four distinct cartels, the cartelists established and coordinated four different surcharges and charging mechanisms, which are component elements of the final price billed to customers for these services."

61.   On March 8, 2013, the DOJ announced that K Line Logistics Ltd., a subsidiary of Defendant K Line, agreed to pay a $3,507,246 criminal fine for its role in a conspiracy to fix certain freight-forwarding fees for cargo shipped by air from the United States to Japan. As with MOL Logistics (Japan) Co. Ltd., "K" Line Logistics pleaded guilty to meeting with co-conspirators, agreeing to what freight forwarding service fees should be charged on air cargo shipments, and actually levying those fees on its customers from about September 2002 until at least November 2007.

62.   In the wake of the air freight forwarding cartel investigations and prosecutions, the DOJ, JFTC, European Commission, and CCB began investigating these companies' Vehicle Shipping arms for price fixing and bid rigging in the Vehicle Shipping market.

---

**CLASS ACTION COMPLAINT**                                                                22

**2. Coordinated Price Increases Not Explained by Increases in Demand Indicate the Existence of a Cartel and the Extent of Damage it has Caused.**

63. Defendants' conspiracy resulted in Defendants' charging inflated prices to OEMs, who directly and independently negotiate contracts with Defendants for the transoceanic shipment of Vehicles to the United States, which comprises a not insignificant portion of the cost of purchasing a Vehicle. Prices for Vehicle Shipping Services have been generally increasing since 2006:



As the graph above demonstrates, pricing for Vehicle Shipping Services (per vehicle) remained relatively flat from 2001 to 2006. In 2001, the per vehicle price was approximately $301.30, while in 2006 the per vehicle price was $305.79, an increase of less than 2 percent. Beginning just prior to the Class Period, the price of Vehicle Shipping Services has increased by 23 percent. This increase in the price of Vehicle Shipping Services far outpaced any increase in demand during the Class Period.

**3. Coordinated Global Government Investigations Into Price-Fixing in the Vehicle Shipping Industry Indicate Developing Interest in This Cartel**

64. United States, Canadian, Japanese, and European competition authorities have initiated a global, coordinated antitrust investigation concerning Defendants' unlawful

**CLASS ACTION COMPLAINT** 23

conspiracy. The investigation originated in the United States after an American shipping company complained of Defendants' conspiracy to the DOJ. The DOJ then notified Japanese and European authorities.

65. On September 6, 2012, the JFTC executed raids at the Japanese offices of NYK Line, MOL, K Line, WWL, and Eukor as part of an investigation into anti-competitive conduct related to the Vehicle Shipping industry. Defendant K Line confirmed in a statement to its shareholders, as part of its FY2012 2nd Quarter report, that it was visited by a JFTC investigation team on suspicion of violating Japan's Antimonoply Act in terms of transporting cars and wheeled construction machinery. Defendants NYK Line and MOL further confirmed that their Japanese offices had been searched. Defendant WWL confirmed in a press release on September 7, 2012 that the JFTC had commenced an inquiry at its Tokyo offices related to the AMA and that it received requests for information from the DOJ, European Commission, and the CCB.

66. On the same day, the European Commission carried out additional unannounced inspections at the European offices of several maritime shipping companies suspected of operating a cartel in coordination with the JFTC and the DOJ. According to the European Commission, it "has reasons to believe that the companies concerned may have violated Article 101 of the [Treaty on the functioning of the European Union] TFEU prohibiting cartels and restrictive business practices."

67. The DOJ, through spokesperson Gina Talamona, confirmed to the media shortly after the September raids, "We are coordinating with the European Commission, the Japanese Fair Trade Commission and other international competition authorities." Ms. Talamona explained that "[t]he antitrust division is investigating the possibility of anticompetitive practices

involving the ocean shipping of cars, trucks, construction equipment, and other products." The DOJ and Canadian authorities have formally requested information from at least WWL and EUKOR.

68. The Japanese and European authorities conducted such raids only after obtaining judicial orders based on probable cause that the Defendants had violated antitrust laws.

69. WW-ASA confirmed in its annual report for FY2012, released after the raids, "WWL and EUKOR are subject to investigations by competition authorities in several jurisdictions related to suspected antitrust infringements in the Vehicle Shipping industry. The companies are cooperating with relevant government agencies. Other than the cost of process management which is accounted for on an ongoing basis, no other accruals or reserves have been charged to the 2012 accounts in this context."

70. WWH advised in its 2012 Annual Report that "WWL and EUKOR are subject to investigations by competition authorities in several jurisdictions related to suspected antitrust infringements in the car carrier industry."

71. MOL stated in its FY2012 Financial Highlights report, released after the raids, "In September 2012, the Company was investigated by the Fair Trade Commission on suspicion of infringement of the [AMA] related to the export of complete cars and construction machinery etc. We acknowledge the seriousness of this incident and while cooperating fully with the commission's investigation, we are making all possible efforts to increase our legal compliance."

72. K Line likewise stated in its FY2012 Financial Highlights report, released after the raids, "The Group is currently being investigated by the [JFTC] as well as the competition authorities in Europe, the United States and certain other countries, in relation to alleged anti-

**CLASS ACTION COMPLAINT** 25

1    competitive behavior (alleged formation of a cartel) relation the transportation of automobiles,

2    automotive construction machineries and other exports."

3        73.    NYK Line indicated in its 3Q Fiscal Highlights, released after the raids, that it has

4    set aside 1,370 million yen for potential losses related to antitrust law.

5

6        74.    CSAV stated in its FY2012 Third Quarter Investor Report, "In September 2012,

7    CSAV informed that the company had received a request for information from the governments

8    of USA and Canada, in the frame of an antitrust investigation on the companies participating in

9    car carrier transportation." In its FY2013 First Quarter Investor Report, CSAV further noted that

10   it "has decided to make a provision of US$40 million for the potential costs that the company

11   may be liable to pay in the future as a result of these proceedings, based on the volume of the car

12   carrier business in the different traffics that the company has operated at a global level. The

13   amount provisioned is an estimation of such disbursements under a conservative criterion."

14

15                              **CLASS ACTION ALLEGATIONS**

16       75.    Plaintiffs bring this action on behalf of themselves and as a class action under

17   Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive

18   relief on behalf of the following class (the "Nationwide Class"):

19           All automobile dealers that purchased new Vehicles shipped
20           during the Class Period by Defendants or any current or former
             subsidiary or affiliate thereof or any co-conspirator.
21

22       76.    Plaintiffs also bring this action on behalf of themselves and as a class action under

23   Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, seeking damages pursuant to the

24   antitrust, unfair competition, and consumer protection laws of the states whose laws are set forth

25

26

27

28   **CLASS ACTION COMPLAINT**                                                        26

in the Second and Third Claims for Relief below (the "Indirect Purchaser States") and the common law of unjust enrichment on behalf of following class (the "Damages Class"):

> All automobile dealers, who have claims under the laws of the Indirect Purchaser States, that purchased new Vehicles shipped during the Class Period by one of the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator.

77. The Nationwide Class and the Damages Class are referred to herein as the "Classes." Excluded from the Classes are Defendants; their parent companies, subsidiaries, and affiliates; any co-conspirators; federal governmental entities; instrumentalities of the federal government, states, and their subdivisions, agencies, and instrumentalities; and any judge assigned to hear this matter at either the district or appellate level and any employees or agents of those judges.

78. Although Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are at least thousands of members in each Class.

79. Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making relief with respect to the Classes as a whole appropriate. Such questions of law and fact common to the Classes include but are not limited to:

> (a) Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain, or stabilize Vehicle Shipping charges;
>
> (b) The identity of the participants in the alleged conspiracy;
>
> (c) The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

**CLASS ACTION COMPLAINT**

27

1         (d) Whether the alleged conspiracy violated the Sherman Act, as alleged
2            in the First Claim for Relief;

3         (e) Whether the alleged conspiracy violated state antitrust, unfair
             competition, and/or state consumer protection laws, as alleged in the
4            Second and Third Claims for Relief;

5         (f) Whether Defendants unjustly enriched themselves to the detriment of
             the Plaintiffs and the members of the Classes, thereby entitling
6            Plaintiffs and the members of the Classes to disgorgement of all
7            benefits derived by Defendants, as alleged in the Fourth Claim for
             Relief;

8         (g) Whether the conduct of Defendants and their co-conspirators, as
9            alleged in this Complaint, caused injury to the business or property of
             Plaintiffs and the members of the Classes;

10        (h) The effect of the alleged conspiracy on the prices of Vehicle Shipping
11           to the United States from Japan, Europe, and other localities during the
             Class Period;
12

13        (i) Whether Plaintiffs and members of the Classes had any reason to
             know or suspect the conspiracy, or any means to discover the
14           conspiracy

15        (j) Whether the Defendants and their co-conspirators fraudulently
             concealed the conspiracy's existence from Plaintiffs and the members
16           of the Classes;

17        (k) The appropriate injunctive and related equitable relief for the
18           Nationwide Class; and

19        (l) The appropriate class-wide measure of damages for the Damages
             Class.
20
          80.    Plaintiffs' claims are typical of the claims of the members of the Classes, and
21
22    Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs and all

23    members of the Classes are similarly affected by Defendants' wrongful conduct because they

24    paid artificially inflated prices for Vehicle Shipping Services purchased indirectly from

25    Defendants and/or their co-conspirators.

26

27

28    **CLASS ACTION COMPLAINT**                                           28

81.     Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

82.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

83.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism provide injured entities with a method for obtaining redress for claims that might not be practicable to pursue individually and substantially outweigh any difficulties that may arise in the management of this class action.

84.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY

85.     Defendants' price-fixing conspiracy had the following effects, among others:

    (a) Price competition has been restrained or eliminated with respect to car shipping;

(b) The prices of Vehicle Shipping Services have been fixed, raised, maintained, or stabilized at artificially inflated levels;

(c) Defendants charged artificially inflated Vehicle Shipping prices to purchasers of their Vehicle Shipping Services;

(d) Having paid higher prices for shipment of the cars they sold to Plaintiffs and the Classes, firms who sold Vehicles to Plaintiffs and the Classes passed Defendants' Vehicle Shipping overcharges on to them in full;

(e) Defendants' overcharges passed through each level of distribution as they traveled to Plaintiffs and the Classes; and

(f) Plaintiffs and the Classes paid Defendants' artificially inflated prices for Vehicle Shipping Services, during the Class Period, as a result of the Defendants' conspiracy and have been deprived of free and open competition.

86.     An increase in Vehicle Shipping charges caused an increase in the price of Vehicles during the Class Period.

87.     Plaintiffs and the Classes are entitled to the overcharges they paid for Vehicle Shipping Services.

88.     Because, among other reasons, of the imperfect nature of competition among automobile dealers and the differentiation among dealers by brand and by location, Plaintiffs and the Classes had to and did absorb, at the very least, a significant portion of the overcharges that they paid due to Defendants' illegal activities.

89.     Plaintiffs have standing and have suffered damage compensable by indirect purchaser laws, and they and members of the Classes they seek to represent have sustained significant damage and injury as a result of Defendants' conspiracy.

90.     The market for ocean shipping and the market for cars are inextricably linked and intertwined because the market for Ro-Ros exists to serve the Vehicle market. Without the

**CLASS ACTION COMPLAINT**                                                                                    30

1    Vehicles, the Ro-Ros have little to no value because they have significantly less independent

2    utility. Indeed, the demand for foreign Vehicles creates the demand for Ro-Ros.

3        91.    Vehicle Shipping is an identifiable, discrete service that is clearly distinguishable

4    from the costs associated with manufacturing the Vehicle. The costs of transporting the Vehicles

5
     to automobile dealerships are clearly delineated on invoices submitted to Plaintiffs and the
6
     Classes for the Vehicles they purchase as charges separate from the prices of the Vehicles. As a
7

8    result, the costs of Ro-Ro voyages follow a traceable chain from Defendants to Plaintiffs and the

9    members of the Classes, and any costs attributable to Vehicle Shipping can be traced through the

10   chain of distribution. That is, the price can be traced to show that changes in the prices paid by

11   direct purchasers for Ro-Ro voyages affect prices paid by indirect purchasers for new Vehicles

12
     shipped by Defendants. The precise amount of the overcharge impacting the prices of new
13
     Vehicles shipped by Defendants can be measured and quantified. Thus, the economic harm to
14

15   Plaintiffs and members of the Classes can be quantified.

16       92.    The purpose of the conspiratorial conduct of the Defendants and their

17   coconspirators was to raise, fix, rig, or stabilize the price of Vehicle Shipping Services and, as a

18   direct and foreseeable result, the price of new Vehicles shipped to Plaintiffs from abroad.

19
         93.    By reason of the alleged violations of the antitrust laws, Plaintiffs and the
20
     members of the Classes have sustained injury to their businesses or property, having paid higher
21

22   prices for Vehicle Shipping Services than they would have paid in the absence of Defendants'

23   illegal contract, combination, or conspiracy and have, as a result, suffered damages in an amount

24   presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant

25   to punish and prevent, and Plaintiffs' and Class members' damages are measureable.

26

27

28   **CLASS ACTION COMPLAINT**                                                                          31

## PLAINTIFFS' CLAIMS ARE NOT BARRED
## BY THE STATUTE OF LIMITATIONS

**A. The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not And Could Not Discover The Claims**

94. Plaintiffs repeat and reallege the allegations set forth above.

95. Plaintiffs and the members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until the public announcements of raids on Defendants' offices on September 6, 2012.

96. Plaintiffs and members of the Classes did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until September 6, 2012, the date the JFTC and EC announced raids of the Defendants' offices for their roles in the criminal price-fixing conspiracy alleged herein.

97. Plaintiffs and the members of the Classes are automobile dealers who indirectly purchased Vehicle Shipping Services. They had no direct contact or interaction with any of the Defendants in this case and had no means from which they could have discovered the combination and conspiracy described in this Complaint before the public announcements of raids on September 6, 2012.

98. No information in the public domain was available to the Plaintiffs and the members of the Classes prior to the public announcements of raids on September 6, 2012, that revealed sufficient information to suggest that any one of the Defendants was involved in a criminal conspiracy to fix prices and rig bids for Vehicle Shipping Services. Plaintiffs and the members of the Classes had no means of obtaining any facts or information concerning any

CLASS ACTION COMPLAINT                                                                32

1  aspect of Defendants' dealings with OEMs or other direct purchasers, much less the fact that

2  they had engaged in the combination and conspiracy alleged herein.

3      99.     For these reasons, the statute of limitations as to Plaintiffs' and the Classes'

4  claims did not begin to run, and has been tolled with respect to the claims that Plaintiffs and the

5  members of the Classes have alleged in this Complaint.

6

7      **B.      Fraudulent Concealment Tolled the Statute of Limitations.**

8      100.    In the alternative, application of the doctrine of fraudulent concealment tolled the

9  statute of limitations on the claims asserted herein by Plaintiffs and the Classes. Plaintiffs and

10  the members of the Classes did not discover, and could not discover through the exercise of

11  reasonable diligence, the existence of the conspiracy alleged herein until the September 6, 2012

12  public announcement of the government investigations into price fixing of Vehicle Shipping

13  charges.

14

15      101.    Because Defendants' agreements, understandings, and conspiracy were kept

16  secret until September 6, 2012, Plaintiffs and members of the Classes were unaware of

17  Defendants' unlawful conduct before that time, and they did not know before then that they were

18  paying supracompetitive prices for Vehicle Shipping to the United States during the Class

19  Period.

20

21      102.    The affirmative acts of the Defendants alleged herein, including acts in

22  furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that

23  precluded detection.

24      103.    By its very nature, Defendants' anticompetitive conspiracy and unlawful

25  combinations were inherently self-concealing. Individually negotiated, non-tarriffed ocean

26

27

28

shipping is not exempt from antitrust regulation, and thus, before September 6, 2012, Plaintiffs reasonably considered it to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' ocean shipping prices before September 6, 2012.

104. Because the alleged conspiracy was self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until September 6, 2012, when reports of the investigations into anticompetitive conduct concerning Vehicle Shipping were first publicly disseminated.

105. As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to any claims that Plaintiffs and the members of the Classes have alleged in this Complaint.

## FIRST CLAIM FOR RELIEF
### Violation of Section 1 of the Sherman Act
### (on behalf of Plaintiffs and the Nationwide Class)

106. Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

107. The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

**CLASS ACTION COMPLAINT** 34

108.    At least as early as January 1, 2007, and continuing until the present, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for Vehicle Shipping Services, thereby creating anticompetitive effects.

109.    The anticompetitive acts were intentionally directed at the United States market for Vehicle Shipping Services and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for Vehicle Shipping Services in the United States.

110.    The conspiratorial acts and combinations have caused unreasonable restraints in the market for Vehicle Shipping Services.

111.    As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased Vehicles shipped by Defendants have been harmed by being forced to pay inflated, supracompetitive prices for Vehicle Shipping Services.

112.    In formulating and carrying out the alleged agreement, understanding, and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth herein.

113.    Defendants' conspiracy had the following effects, among others:

(a)    Price competition in the market for Vehicle Shipping Services has been restrained, suppressed, and/or eliminated in the United States;

(b)    Prices for Vehicle Shipping Services provided by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, noncompetitive levels throughout the United States;

1

2

   (c) Prices for Vehicles purchased by Plaintiffs and the members of the Nationwide Class and shipped by Defendants and their coconspirators were inflated; and

3

4

5

   (d) Plaintiffs and members of the Nationwide Class who purchased Vehicles shipped by Defendants and indirectly paid Defendants for Vehicle Shipping Service have been deprived of the benefits of free and open competition.

6

7

8

9

  114. Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Vehicle Shipping Services than they would have paid and will pay in the absence of the conspiracy.

10

11

12

13

  115. Plaintiffs and members of the Nationwide Class will continue to be subject to Defendants' price-fixing, bid-rigging, and market allocations, which will deprive Plaintiffs and members of the Nationwide Class of the benefits of free competition, including competitively-priced Vehicle Shipping Services.

14

15

16

17

18

  116. Plaintiffs and members of the Nationwide Class will continue to lose funds due to overpayment for Vehicle Shipping Services because they are required to purchase Vehicles that are imported on Ro-Ros owned and operated by Defendants and their co-conspirators to continue to operate their businesses.

19

20

21

  117. Plaintiffs and members of the Nationwide Class continue to purchase vehicles that are imported on Ro-Ros owned and operated by Defendants and their co-conspirators, on a regular basis, and to pay fees for Vehicle Shipping Services.

22

23

24

  118. Defendants and their co-conspirators continue to charge fees for their Vehicle Shipping Services that are inflated, fixed, and maintained by their conspiracy.

25

26

  119. The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

27

28

**CLASS ACTION COMPLAINT**                 36

120. Plaintiffs and members of the Nationwide Class will be at the mercy of Defendants' unlawful conduct until the Court orders an injunction.

121. Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF
### Violation of State Antitrust Statutes
### (on behalf of Plaintiffs and the Damages Class)

122. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

123. From as early as January 1, 2007, until at least the filing of this Complaint, Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to Vehicle Shipping Services in unreasonable restraint of trade and commerce and in violation of the various state antitrust statutes set forth below.

124. The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize and/or maintain artificially supracompetitive prices for Vehicle Shipping Services, to rig bids for the Vehicle Shipping Services, and to allocate customers for Ro-Ro voyages to the United States and Vehicle Shipping Services in the United States.

125. In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

        (a)    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Vehicle Shipping Services at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Vehicle Shipping Services sold and/or provided in the United States;

(b)     allocating customers and markets for Vehicle Shipping Services in the United States in furtherance of their agreements; and

(c)     participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

126.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, decrease, or stabilize prices and to allocate customers with respect to Heater Control Panels.

127.    Defendants' anticompetitive acts described above were knowing, willful, and constitute violations or flagrant violations of the following state antitrust statutes.

128.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout Arizona; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Vehicle Shipping Services.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

**CLASS ACTION COMPLAINT**                                                        38

(d)     By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

129.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

(a)     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720 of the California Business and Professions Code. Defendants, each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Ro-Ro voyages to the United States and Vehicle Shipping Services in the United States at supracompetitive levels.

(b)     The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, Ro-Ro voyages to the United States and Vehicle Shipping Services in the United States.

(c)     For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices, and course of conduct set forth above and the following: (1) Fixing, raising, stabilizing, and pegging the price of Heater Control Panels; and (2) Allocating among themselves the provision of Vehicle Shipping Services.

**CLASS ACTION COMPLAINT**                                                                                      39

(d)     The combination and conspiracy alleged herein has had, *inter alia*, the following effects upon the commerce of California: (1) Price competition in the sale of Vehicle Shipping Services has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for Vehicle Shipping Services sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased Vehicle Shipping Services from Defendants and their co-conspirators, directly or indirectly, have been deprived of the benefit of free and open competition.

(e)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for Vehicle Shipping Services than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

130.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Official Code §§ 28-4501, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2)   prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class, including those who resided in the District of Columbia and/or

1 purchased Vehicles in the District of Columbia that were shipped by Defendants or their co-

2 conspirators, were deprived of free and open competition, including in the District of Columbia;

3 and (4) Plaintiffs and members of the Damages Class, including those who resided in the District

4 of Columbia and/or purchased Vehicles in the District of Columbia that were shipped by

5 Defendants or their co-conspirators, paid supracompetitive, artificially inflated prices for Vehicle

6 Shipping Services, including in the District of Columbia.

7

8      (b)     During the Class Period, Defendants' illegal conduct substantially affected

9 District of Columbia commerce.

10     (c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

11 members of the Damages Class have been injured in their business and property and are

12 threatened with further injury.

13

14     (d)     By reason of the foregoing, Defendants have entered into agreements in restraint

15 of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly,

16 Plaintiffs and members of the Damages Class seek all forms of relief available under District of

17 Columbia Code Ann. §§ 28-4501, *et seq.*

18     131.    Defendants have entered into an unlawful agreement in restraint of trade in

19 violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*

20

21     (a)     Defendants' unlawful conduct had the following effects: (1) Vehicle Shipping

22 price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) prices for

23 Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels

24 throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and

25

26

27

28   **CLASS ACTION COMPLAINT**                                                          41

open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for Vehicle Shipping Services.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-4, *et seq.*   Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Hawaii Revised Statutes Annotated §§ 480-4, *et seq.*

132.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, 740 Illinois Compiled Statutes 10/1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout Illinois; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Vehicle Shipping Services.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce.

**CLASS ACTION COMPLAINT**                                                                   42

1   (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

2 members of the Damages Class have been injured in their business and property and are

3 threatened with further injury.

4

5   (d) By reason of the foregoing, Defendants have entered into agreements in restraint

6 of trade in violation of 740 Illinois Compiled Statutes 10/1, *et seq.* Accordingly, Plaintiffs and

7 members of the Damages Class seek all forms of relief available under 740 Illinois Compiled

8 Statutes 10/1, *et seq.*

9   133. Defendants have entered into an unlawful agreement in restraint of trade in

10 violation of the Iowa Code §§ 553.1, *et seq.*

11   (a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle

12 Shipping price competition was restrained, suppressed, and eliminated throughout Iowa; (2)

13 prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially

14 high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of

15 free and open competition; and (4) Plaintiffs and members of the Damages Class paid

16 supracompetitive, artificially inflated prices for Vehicle Shipping Services.

17

18   (b) During the Class Period, Defendants' illegal conduct substantially affected Iowa

19 commerce.

20

21   (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

22 members of the Damages Class have been injured in their business and property and are

23 threatened with further injury.

24

25

26

27

28  **CLASS ACTION COMPLAINT**             43

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

134.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq.*

(b)     Defendants' combinations or conspiracies had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout Kansas; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Vehicle Shipping Services.

(c)     During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

(d)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(e)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

135.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

**CLASS ACTION COMPLAINT**                                                                            44

(a)     Defendants' combinations or conspiracies had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout Maine; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Vehicle Shipping Services.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10. §§ 1101, *et seq.*

136.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout Michigan; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were

**CLASS ACTION COMPLAINT**                                                                                    45

1  deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class

2  paid supracompetitive, artificially inflated prices for Vehicle Shipping Services.

3      (b)    During the Class Period, Defendants' illegal conduct substantially affected

4  Michigan commerce.

5

6      (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

7  members of the Damages Class have been injured in their business and property and are

8  threatened with further injury.

9      (d)    By reason of the foregoing, Defendants have entered into agreements in restraint

10  of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiffs

11  and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann.

12  §§ 445.771, *et seq.*

13

14      137.    Defendants have entered into an unlawful agreement in unreasonable restraint of

15  trade in violation of the Minnesota Statutes Annotated §§ 325D.49, *et seq.*

16      (a)    Defendants' combinations or conspiracies had the following effects: (1) Vehicle

17  Shipping price competition was restrained, suppressed, and eliminated throughout Minnesota; (2)

18  prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially

19  high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were

20  deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class

21

22  paid supracompetitive, artificially inflated prices for Vehicle Shipping Services.

23      (b)    During the Class Period Defendants' illegal conduct substantially affected

24  Minnesota commerce.

25

26

27

28  **CLASS ACTION COMPLAINT**                                                      46

1    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

2    members of the Damages Class have been injured in their business and property and are

3    threatened with further injury.

4    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint

5    of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.* Accordingly, Plaintiffs and members

6    of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

7

8    138.    Defendants have entered into an unlawful agreement in restraint of trade in

9    violation of the Mississippi Code Annotated §§ 75-21-1, *et seq.*

10    (a)    Defendants' combinations or conspiracies had the following effects: (1) Vehicle

11    Shipping price competition was restrained, suppressed, and eliminated throughout Mississippi;

12    (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at

13    artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class,

14    including those who resided in Mississippi and/or purchased Vehicles in Mississippi that were

15    including those who resided in Mississippi and/or purchased Vehicles in Mississippi that were

16    shipped by Defendants or their co-conspirators, were deprived of free and open competition,

17    including in Mississippi; and (4) Plaintiffs and members of the Damages Class, including those

18    who resided in Mississippi and/or purchased Vehicles in Mississippi that were shipped by

19    Defendants or their co-conspirators, paid supracompetitive, artificially inflated prices for Vehicle

20    Shipping Services, including in Mississippi.

21

22    (b)    During the Class Period, Defendants' illegal conduct substantially affected

23    Mississippi commerce.

24

25

26

27

28    **CLASS ACTION COMPLAINT**                                                                47

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

139.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Vehicle Shipping Services.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiffs and

**CLASS ACTION COMPLAINT**                                                                              48

members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

140.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout Nevada; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class, including those who resided in Nevada and/or purchased Vehicles in Nevada that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in Nevada; and (4) Plaintiffs and members of the Damages Class, including those who resided in Nevada and/or purchased Vehicles in Nevada that were shipped by Defendants or their co-conspirators, paid supracompetitive, artificially inflated prices for Vehicle Shipping Services, including in Nevada.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.060, *et seq.* Accordingly, Plaintiffs and

1   members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§

2   598A.010, *et seq.*

3       141.   Defendants have entered into an unlawful agreement in restraint of trade in

4   violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

5

6       (a)   Defendants' combinations or conspiracies had the following effects: (1) Vehicle

7   Shipping price competition was restrained, suppressed, and eliminated throughout New

8   Hampshire; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and

9   stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of

10  the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members

11  of the Damages Class paid supracompetitive, artificially inflated prices for Vehicle Shipping

12  Services.

13

14      (b)   During the Class Period Defendants' illegal conduct substantially affected New

15  Hampshire commerce.

16      (c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

17  members of the Damages Class have been injured in their business and property and are

18  threatened with further injury.

19

20      (d)   By reason of the foregoing, Defendants have entered into agreements in restraint

21  of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiffs

22  and members of the Damages Class seek all relief available under New Hampshire Revised

23  Statutes §§ 356:1, *et seq.*

24      142.   Defendants have entered into an unlawful agreement in restraint of trade in

25  violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

26

27

28  **CLASS ACTION COMPLAINT**                                                                 50

(a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Vehicle Shipping Services.

(b) During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann.§§ 57-1-1, *et seq.*

143. Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout New York; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class, including those who resided in New York and/or purchased Vehicles in New York that were shipped by

**CLASS ACTION COMPLAINT**

51

1  Defendants or their co-conspirators, were deprived of free and open competition, including in

2  New York; and (4) Plaintiffs and members of the Damages Class, including those who resided in

3  New York and/or purchased Vehicles in New York that were shipped by Defendants or their co-

4  conspirators, paid supracompetitive, artificially inflated prices for Vehicle Shipping Services,

5
6  including in New York, when they purchased Vehicles transported by Ro-Ros, or purchased

7  products that were otherwise of lower quality, than would have been absent the Defendants'

8  illegal acts, or were unable to purchase products or Vehicles that they would have otherwise have

9  purchased absent the illegal conduct.

10      (b)     During the Class Period, Defendants' illegal conduct substantially affected New

11  York commerce.

12
13      (c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

14  members of the Damages Class have been injured in their business and property and are

15  threatened with further injury.

16      (d)     By reason of the foregoing, Defendants have entered into agreements in restraint

17  of trade in violation of the New York Donnelly Act, §§ 340, *et seq.* The conduct set forth above

18  is a per se violation of the Act. Accordingly, Plaintiffs and members of the Damages Class seek

19  all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

20
21      144.    Defendants have entered into an unlawful agreement in restraint of trade in

22  violation of the North Carolina General Statutes §§ 75-1, *et seq.*

23      (a)     Defendants' combinations or conspiracies had the following effects: (1) Vehicle

24  Shipping price competition was restrained, suppressed, and eliminated throughout North

25  Carolina; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized

26
27

28

1    at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages

2    Class, including those who resided in North Carolina and/or purchased Vehicles in North

3    Carolina that were shipped by Defendants or their co-conspirators, were deprived of free and

4    open competition, including in North Carolina; and (4) Plaintiffs and members of the Damages

5

6    Class, including those who resided in North Carolina and/or purchased Vehicles in North

7    Carolina that were shipped by Defendants or their co-conspirators, paid supracompetitive,

8    artificially inflated prices for Vehicle Shipping Services, including in North Carolina.

9       (b)     During the Class Period, Defendants' illegal conduct substantially affected North

10    Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs

11    and members of the Damages Class have been injured in their business and property and are

12

13    threatened with further injury.

14       (c)     By reason of the foregoing, Defendants have entered into agreements in restraint

15    of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, Plaintiffs and

16    members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1,

17    *et seq.*

18      145.     Defendants have entered into an unlawful agreement in restraint of trade in

19    violation of the North Dakota Century Code §§ 51-08.1-01, *et seq.*

20

21       (a)     Defendants' combinations or conspiracies had the following effects: (1) Vehicle

22    Shipping price competition was restrained, suppressed, and eliminated throughout North Dakota;

23    (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at

24    artificially high levels throughout North Dakota; (3) Plaintiffs and members of the Damages

25

26

27

28    **CLASS ACTION COMPLAINT**                           53

1 Class were deprived of free and open competition; and (4) Plaintiffs and members of the

2 Damages Class paid supracompetitive, artificially inflated prices for Vehicle Shipping Services.

3     (b)     During the Class Period, Defendants' illegal conduct had a substantial effect on

4 North Dakota commerce.

5

6     (c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

7 members of the Damages Class have been injured in their business and property and are

8 threatened with further injury.

9     (d)     By reason of the foregoing, Defendants have entered into agreements in restraint

10 of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiffs

11 and members of the Damages Class seek all relief available under North Dakota Cent. Code §§

12 51-08.1-01, *et seq.*

13

14     146.     Defendants have entered into an unlawful agreement in restraint of trade in

15 violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

16     (a)   Defendants' combinations or conspiracies had the following effects: (1) Vehicle

17 Shipping price competition was restrained, suppressed, and eliminated throughout Oregon; (2)

18 prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially

19 high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived

20 of free and open competition; and (4) Plaintiffs and members of the Damages Class paid

21

22 supracompetitive, artificially inflated prices for Vehicle Shipping Services.

23     (b)   During the Class Period Defendants' illegal conduct had a substantial effect on

24 Oregon commerce.

25

26

27

28 **CLASS ACTION COMPLAINT**                                     54

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

147. Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1., *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class, including those who resided in South Dakota and/or purchased Vehicles in South Dakota that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in South Dakota; and (4) Plaintiffs and members of the Damages Class, including those who resided in South Dakota and/or purchased Vehicles in South Dakota that were shipped by Defendants or their co-conspirators, paid supracompetitive, artificially inflated prices for Vehicle Shipping Services, including in South Dakota.

(b) During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

148.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class, including those who resided in Tennessee and/or purchased Vehicles in Tennessee that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in Tennessee; and (4) Plaintiffs and members of the Damages Class, including those who resided in Tennessee and/or purchased Vehicles in Tennessee that were shipped by Defendants or their co-conspirators, paid supracompetitive, artificially inflated prices for Vehicle Shipping Services, including in Tennessee.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce. As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(c)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

149.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-911, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout Utah; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Vehicle Shipping Services.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq.* Accordingly, Plaintiffs and

**CLASS ACTION COMPLAINT**                                                                          57

1 members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-
2 911, *et seq.*

3    150.    Defendants have entered into an unlawful agreement in restraint of trade in
4 violation of the 9 Vermont Stat. Ann. §§ 2451, *et seq.*
5

6    (a)    Defendants' combinations or conspiracies had the following effects: (1) Vehicle
7 Shipping price competition was restrained, suppressed, and eliminated throughout Vermont; (2)
8 prices Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially
9 high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived
10 of free and open competition; and (4) Plaintiffs and members of the Damages Class paid
11 supracompetitive, artificially inflated prices for Vehicle Shipping Services.
12

13    (b)    During the Class Period Defendants' illegal conduct had a substantial effect on
14 Vermont commerce.

15    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and
16 members of the Damages Class have been injured in their business and property and are
17 threatened with further injury.

18    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint
19 of trade in violation of 9 Vermont Stat. Ann. §§ 2451, *et seq.* Plaintiffs are entitled to relief
20 pursuant to 9 Vermont Stat. Ann. § 2465 and any other applicable authority. Accordingly,
21 Plaintiffs and members of the Damages Class seek all relief available under 9 Vermont Stat.
22 Ann. §§ 2451, *et seq.*
23

24    151.    Defendants have entered into an unlawful agreement in restraint of trade in
25 violation of the West Virginia Code §§ 47-18-1, *et seq.*

26
27

28 **CLASS ACTION COMPLAINT**                                                                   58

(a)     Defendants' combinations or conspiracies had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class, including those who resided in West Virginia and/or purchased Vehicles in West Virginia that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in West Virginia; and (4) Plaintiffs and members of the Damages Class, including those who resided in West Virginia and/or purchased Vehicles in West Virginia that were shipped by Defendants or their co-conspirators, paid supracompetitive, artificially inflated prices for Vehicle Shipping Services, including in West Virginia.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia §§ 47-18-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia §§ 47-18-1, *et seq.*

152.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2)

prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Vehicle Shipping Services.

(b) During the Class Period Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

153. Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy, and agreement. Plaintiffs and members of the Damages Class have paid more for Vehicle Shipping Services than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

154. In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class.

**CLASS ACTION COMPLAINT** 60

155. Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

**THIRD CLAIM FOR RELIEF**
**Violation of State Consumer Protection Statutes**
**on behalf of Plaintiffs and the Damages Class**

156. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

157. Defendants knowingly engaged in unlawful, unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

158. Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101.

(a) Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Vehicle Shipping Service were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b) The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

**CLASS ACTION COMPLAINT**                                                                 61

(c)     Defendants' unlawful conduct had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Vehicle Shipping Services.

(d)     During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

159.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*

(a)     During the Class Period, Defendants marketed, sold, or distributed Vehicle Shipping Services in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

**CLASS ACTION COMPLAINT**                                                        62

(b)     During the Class Period, Defendants' illegal conduct substantially affected California commerce and consumers.

(c)     This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(d)     The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.,* including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.,* of the California Business and Professions Code, set forth above;

(e)     Defendants' acts, omissions, misrepresentations, practices, and nondisclosures, as described above, whether or not in violation of Section 16720, *et seq.,* of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

(f)     Defendants' acts or practices are unfair to purchasers of Vehicle Shipping Services in the State of California within the meaning of Section 17200, California Business and Professions Code; and

(g)     Defendants' unlawful conduct had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout California; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout California; (3) Plaintiffs and members of the Damages Class, including those who resided in California and/or purchased Vehicles in California that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in California; and (4) Plaintiffs and members of the Damages Class, including those who resided in California and/or purchased Vehicles in California that were shipped by Defendants or their co-conspirators, paid supracompetitive, artificially inflated prices for Vehicle Shipping Services, including in California.

(h)     Defendants' acts and practices are unlawful, fraudulent, or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(i)     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(j)     The unlawful, fraudulent, deceptive, and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the Damages Class to pay supracompetitive and artificially-inflated prices for Vehicle Shipping Services. Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(k)     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief

including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

160. Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

(a) Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which Vehicle Shipping Services were sold, distributed, or obtained in the District of Columbia.

(b) The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904.

(c) During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce and consumers.

(d) Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Vehicle Shipping Services. Defendants had the sole power to set that price, and Plaintiffs had no power to negotiate a lower price.

(e) Moreover, Plaintiffs lacked any meaningful choice in purchasing Vehicle Shipping Services because they were unaware of the unlawful overcharge and because they had to purchase the Services in order to be able to import their Vehicles.

---

**CLASS ACTION COMPLAINT**

(f)     Defendants' conduct with regard to sales of Vehicle Shipping Services, including their illegal conspiracy to secretly fix the price of Vehicle Shipping Services at supracompetitive levels and overcharge purchasers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair advantage of Plaintiffs.

(g)     Defendants' unlawful conduct had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the Damages Class paid supracompetitive, artificially inflated prices for Vehicle Shipping Services.

(h)     The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in that such conduct, *inter alia*, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Vehicle Shipping Services, due to the inflated prices paid by Plaintiffs and Class members for Vehicles and the Vehicle Shipping Services.

(i)     As a direct and proximate result of the Defendants' conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.,* and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**CLASS ACTION COMPLAINT**                                                                              66

161. Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

(a) Defendants' unlawful conduct had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout Florida; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Vehicle Shipping Services; and (5) Reasonable purchasers in Florida were deceived into believing that they were paying competitive prices for their Vehicles and Vehicle Shipping Services.

(b) During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) Defendants have engaged in unfair competition or unlawful, unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.,* and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

162. Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of the Massachusetts Gen. Laws, Ch 93A, § 1 *et seq.*

**CLASS ACTION COMPLAINT**                                                                 67

(a)    Defendants were engaged in trade or commerce as defined by G.L. 93A. Defendants, in a market that includes Massachusetts, agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Vehicle Shipping Services were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)    The aforementioned conduct on the part of the Defendants constituted "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," in violation of Massachusetts Gen. Laws, Ch 93A, § 2, 11.

(c)    Defendants' unlawful conduct had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Vehicle Shipping Services.

(d)    During the Class Period, Defendants' illegal conduct substantially affected Massachusetts commerce and consumers.

(e)    As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(f)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Massachusetts Gen. Laws, Ch 93A, §§ 2, 11, that were knowing or

**CLASS ACTION COMPLAINT**                                                                 68

willful, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute, including multiple damages.

163. Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

(a) Defendants engaged in the conduct described herein in connection with the sale of Vehicle Shipping Services in trade or commerce in a market that includes Missouri.

(b) During the Class Period, Defendants' illegal conduct substantially affected Missouri commerce and consumers.

(c) Defendants agreed to, and did in fact affect, fix, control, and/or maintain at artificial and non-competitive levels, the prices at which Vehicle Shipping Services were sold, distributed, or obtained in Missouri which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive, and unscrupulous, and caused substantial injury to Plaintiffs and members of the Damages Class.

(d) Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Vehicle Shipping Services. The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Damages Class as they related to the cost of Vehicle Shipping Services and the Vehicles they purchased.

(e) Defendants' unlawful conduct had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout Missouri; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels

**CLASS ACTION COMPLAINT** 69

throughout Missouri; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Vehicle Shipping Services.

(f)     The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

(g)     As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or property.

(h)     Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ," as further interpreted by the Missouri Code of State Regulations, which provides for the relief sought in this count.

164.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq.*

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which Vehicle Shipping Services were sold, distributed, or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

1

2         (b)    The aforementioned conduct on the part of Defendants constituted

3    "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct,

4    *inter alia*, resulted in a gross disparity between the value received by Plaintiffs and the member

5    of the Damages Class and the prices paid by them for Vehicle Shipping Services as set forth in

6    N.M.S.A., § 57-12-2E. Plaintiffs were not aware of Defendants' price-fixing conspiracy and

7    were therefore unaware that they were being unfairly and illegally overcharged. There was a

8    gross disparity of bargaining power between the parties with respect to the price charged by

9    Defendants for Vehicle Shipping Services. Defendants had the sole power to set that price, and

10   Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful

11   choice in purchasing Vehicle Shipping Services because they were unaware of the unlawful

12   overcharge and because they had to purchase Vehicle Shipping Services in order to be able to

13

14   import their Vehicles for sale in the United States. Defendants' conduct with regard to sales of

15   Vehicle Shipping Services, including their illegal conspiracy to secretly fix the price of Vehicle

16   Shipping Services at supracompetitive levels and overcharge consumers, was substantively

17   unconscionable because it was one-sided and unfairly benefited Defendants at the expense of

18   Plaintiffs and the public. Defendants took grossly unfair advantage of Plaintiffs.

19        (c)    The aforementioned conduct on the part of the Defendants constituted

20   "unconscionable trade practices," in violation of N.M.S.A. § 57-12-3, in that such conduct, *inter*

21   *alia*, resulted in a gross disparity between the value received by Plaintiffs and the members of the

22

23   Damages Class and the prices paid by them for the Vehicle Shipping Services as set forth in

24   N.M.S.A. § 57-12-2E, due to the inflated prices paid by Plaintiffs and Class members for the

25   Vehicles and the Vehicle Shipping Services.

26

27

28   **CLASS ACTION COMPLAINT**                        71

(d)     Defendants' unlawful conduct had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Vehicle Shipping Services.

(e)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(f)     As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(g)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.,* and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

165.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

(a)     Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Vehicle Shipping Services were sold, distributed, or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     Defendants deceptively led purchasers, such as Plaintiffs and Class members, to believe that Vehicle Shipping Services they had purchased had been sold at legal competitive

**CLASS ACTION COMPLAINT**                                                                 72

prices, when they had in fact been sold at collusively obtained inflated prices, that were passed on to them.

(c)     The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in injuries to purchasers and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(d)     Because of Defendants' unlawful trade practices in the State of New York, New York purchasers who indirectly purchased Vehicle Shipping Services were misled to believe that they were paying a fair price for Vehicle Shipping Services or the price increases for Vehicle Shipping Services were for valid business reasons; and similarly situated purchasers were potentially affected by Defendants' conspiracy.

(e)     Defendants' unlawful conduct had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout New York; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class, including those who resided in New York and/or purchased Vehicles in New York that were shipped by Defendants or their co-conspirators, were deprived of free and open competition and were subject to Defendants' deceptive practices, including in New York; and (4) Plaintiffs and members of the Damages Class, including those who resided in New York and/or purchased Vehicles in New York that were shipped by Defendants or their co-conspirators, paid

**CLASS ACTION COMPLAINT**                                                                                     73

supracompetitive, artificially inflated prices for Vehicle Shipping Services, and were subjected to Defendants' deceptive practices, including in New York.

(f)     Defendants knew that their unlawful trade practices with respect to pricing Vehicle Shipping Services would have an impact on all purchasers in New York and not just the Defendants' direct customers.

(g)     Defendants knew that their unlawful trade practices with respect to pricing Vehicle Shipping Services would have a broad impact, causing class members who indirectly purchased Vehicle Shipping Services to be injured by paying more for Vehicle Shipping Services than they would have paid in the absence of Defendants' unlawful trade acts and practices.

(h)     During the Class Period, Defendants marketed, sold, or distributed Vehicle Shipping Services in New York and their illegal conduct substantially affected New York commerce and New York purchasers.

(i)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, sold and/or distributed Vehicle Shipping Services in New York.

(j)     Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349(h).

166.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*

(a)     Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the

1  prices at which Vehicle Shipping Services were sold, distributed, or obtained in North Carolina

2  and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

3         (b)     The conduct of the Defendants described herein constitutes consumer-oriented

4
5  deceptive acts or practices within the meaning of North Carolina law, which resulted in

6  injuries to purchasers of Vehicle Shipping Services and broad adverse impact on the public at

7  large, and harmed the public interest of North Carolina purchasers in an honest marketplace in

8  which economic activity is conducted in a competitive manner.

9         (c)     Defendants' unlawful conduct had the following effects upon purchasers of

10 Vehicle Shipping Services in North Carolina: (1) Vehicle Shipping price competition was

11 restrained, suppressed, and eliminated throughout North Carolina; (2) prices for Vehicle

12 Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels
13
   throughout North Carolina; (3) Plaintiffs and members of the Damages Class, including those
14
15 who resided in North Carolina and/or purchased Vehicles in North Carolina that were shipped

16 by Defendants or their co-conspirators, were deprived of free and open competition, including

17 in North Carolina; and (4) Plaintiffs and members of the Damages Class, including those who

18 resided in North Carolina and/or purchased Vehicles in North Carolina that were shipped by

19 Defendants or their co-conspirators, paid supracompetitive, artificially inflated prices for
20
   Vehicle Shipping Services, including in North Carolina.
21

22        (d)     During the Class Period, Defendants' illegal conduct substantially affected

23 North Carolina commerce and purchasers of Vehicle Shipping Services.

24        (e)     Defendants' price-fixing conspiracy could not have succeeded absent deceptive

25 conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation,

26

27

28 **CLASS ACTION COMPLAINT**                                                                    75

implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware. Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in secret, and confining the plan to a small group of higher-level officials at each company.

(f)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, marketed, sold and/or distributed Vehicle Shipping Services in North Carolina.

(g)     Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

167.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Vehicle Shipping Services.

**CLASS ACTION COMPLAINT**                                                                 76

(b) During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.,* and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

168. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

(a) Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Vehicle Shipping Services were sold, distributed, or obtained in Vermont.

(b) Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Vehicle Shipping Services. Defendants owed a duty to disclose such facts, and Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' prices for Vehicle Shipping Services were competitive and fair.

(c) Defendants' unlawful conduct had the following effects: (1) Vehicle Shipping price competition was restrained, suppressed, and eliminated throughout Vermont; (2) prices for Vehicle Shipping Services were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and

1   open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive,

2   artificially inflated prices for Vehicle Shipping Services.

3       (d)     As a direct and proximate result of the Defendants' violations of law, Plaintiffs

4   and members of the Damages Class suffered an ascertainable loss of money or property as a

5
    result of Defendants' use or employment of unconscionable and deceptive commercial practices
6
7   as set forth above.   That loss was caused by Defendants' willful and deceptive conduct, as

8   described herein.

9       (e)     Defendants' deception, including their affirmative misrepresentations and

10  omissions concerning the price of Vehicle Shipping Services, likely misled all purchasers acting

11  reasonably under the circumstances to believe that they were purchasing Vehicle Shipping

12  Services at prices set by a free and fair market.   Defendants' misleading conduct and
13
    unconscionable activities constitute unfair competition or unfair or deceptive acts or practices in
14
15  violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the Damages

16  Class seek all relief available under that statute.

17                          **FOURTH CLAIM FOR RELIEF**
                            **Unjust Enrichment on behalf of**
18                          **Plaintiffs and the Damages Class**

19
        169.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.
20
        170.    Plaintiffs bring this claim under the laws of all states listed in the Second and
21
22  Third Claims, *supra.*

23      171.    As a result of their unlawful conduct described above and their violations of the

24  antitrust and consumer protection laws set forth above, Defendants have and will continue to be

25  unjustly enriched.   Defendants have been unjustly enriched by the receipt of, at a minimum,

26  unlawfully inflated prices and unlawful profits on sales of Vehicle Shipping Services.

27

28

**CLASS ACTION COMPLAINT**                                                                     78

172.   Defendants have benefited from their unlawful acts, and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs or the members of the Damages Class for Vehicle Shipping Services.

173.   Plaintiffs and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

174.   Pursuit of any remedies against the firms from whom Plaintiffs and the Class members purchased vehicles shipped by Defendants subject to Defendants' conspiracy would have been futile, given that those firms did not take part in Defendants' conspiracy.

## PRAYER FOR RELIEF

Accordingly, Plaintiffs respectfully request that:

A.   The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

B.   The unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)   An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)   A *per se* violation of Section 1 of the Sherman Act;

**CLASS ACTION COMPLAINT**                                                                  79

(c)     An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

(d)     Acts of unjust enrichment by Defendants as set forth herein.

C.     Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

D.     Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

E.     Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

F.     Plaintiffs and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

G.     Plaintiffs and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

**CLASS ACTION COMPLAINT**                                                                    80

H.      Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

I.      Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

Dated June 12, 2013                              Respectfully submitted,


                                                _Pierce Gore_

CUNEO GILBERT & LADUCA, LLP              PRATT & ASSOCIATES
Sandra Cuneo (SBN 110388)                Ben F. Pierce Gore (SBN 128515)
Jonathan W. Cuneo (*pro hac vice* to be filed)   1871 The Alameda, Suite 425
Joel Davidow (*pro hac vice* to be filed)        San Jose, California 95126
Katherine Van Dyck (*pro hac vice* to be filed)  Telephone:(408) 369-0800
Victoria Romanenko (*pro hac vice* to be filed)  Facsimile: (408) 369-0752
Daniel Cohen (*pro hac vice* to be filed)        gore@prattattorneys.com
507 C Street NE
Washington, D.C. 20002                   CHARLES BARRETT, P.C.
Telephone:    (202) 789-3960             Charles Barrett (*pro hac vice* to be filed)
Facsimile:    (202) 789-1813             6518 Highway 100, Suite 210
scuneo@cuneolaw.com                      Nashville, Tennessee 37205
jcuneo@cuneolaw.com                      Telephone: (615) 515-3393
joel@cuneolaw.com                        Facsimile: (615) 515-3395
kvandyck@cuneolaw.com                    charles@cfbfirm.com
vicky@cuneolaw.com
danielc@cuneolaw.com                     THRASH LAW FIRM, P.A.
                                         Thomas P. Thrash (*pro hac vice* to be filed)
BARRETT LAW GROUP, P.A.                  1101 Garland Street
Don Barrett (*pro hac vice* to be filed) Little Rock, Arkansas 72201
David McMullan (*pro hac vice* to be filed)  Telephone: (501) 374-1058
Brian Herrington (*pro hac vice* to be filed)  tomthrash@sbcglobal.net
404 Court Square
P.O. Box 927                             DERFNER, ALTMAN & WILBORN
Lexington, Mississippi 39095             Armand Derfner, Esq. (*pro hac vice* to be filed)
Telephone: (662) 834-2488               575 King Street, Suite B
Facsimile: (662) 834-2628               Charleston, South Carolina 29403
dbarrett@barrettlawgroup.com             Telephone: (843) 723-9804

**CLASS ACTION COMPLAINT**                                              81

1   bherrington@barrettlawgroup.com
    dmcmullan@barrettlawgroup.com
2

3   LOVELACE & ASSOCIATES, P.A.
    Dewitt Lovelace (*pro hac vice* to be filed)
4   Valerie Nettles (*pro hac vice* to be filed)
    Suite 200
5   12870 US Hwy 98 West
    Miramar Beach, Florida 32550
6   Telephone: (850) 837-6020
7   Facsimile: (850) 837-4093
    dml@lovelacelaw.com
8   alex@lovelacelaw.com

9   LARSON • KING, LLP
    Shawn M. Raiter (*pro hac vice* to be filed)
10  Paul A. Sand
11  2800 Wells Fargo Place
    30 East Seventh Street
12  St. Paul, Minnesota 55101
    Telephone: (651) 312-6500
13  Facsimile: (651) 312-6618
    sraiter@larsonking.com
14  psand@larsonking.com

Facsimile:   (843) 723-
7446aderfner@dawlegal.com

MANTESE HONIGMAN ROSSMAN &
WILLIAMSON, P.C.
Gerard V. Mantese (*pro hac vice* to be filed)
David Hansma (*pro hac vice* to be filed)
Brendan Frey (*pro hac vice* to be filed)
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone:(248) 457-9200
Facsimile: (248) 457-9201
gmantese@manteselaw.com
dhansma@manteselaw.com
bfrey@manteselaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Plaintiffs and the Putative Class*